## THE STATE, on the Relation of WILBER *v.* SALYERS and Others.

Where a sheriff has several executions in his hands, at the same time, on different judgments, and levies any of them upon real estate, and sells it, he should apply the proceeds of the sale to the payment of the several judgments in the order of their seniority, paying the oldest judgment first, without any reference to the fact that the levies and sale may have been made on executions issued upon junior judgments.

The purchaser, at a sheriff's sale on execution, is not bound to see that the sheriff makes a proper return to the executions, or that he makes any return.

When a sheriff levies an execution upon real estate, and sells it for enough to pay the debt, receives the money, and makes the purchaser a deed, the judgment is extinguished, whether the sheriff make return to the execution or not, or although he make a false return.

In such case the judgment-plaintiff must look to the sheriff and his sureties, and can not again collect the debt of the judgment defendant.

Any sale afterward made to pay such judgment, if made to a person having actual or constructive notice of the facts, would be an absolute nullity, and the weight of authority would seem to render any sale upon such a satisfied judgment, whether made to an innocent purchaser or not, an absolute nullity.

APPEAL from the *Jefferson* Circuit Court.

WORDEN, J.—Action by the appellant against the appellees. Demurrer to the complaint sustained, and judgment for the defendants.

The suit is upon a sheriff's bond, conditioned in the usual form.

The complaint states, in substance, that the following judgments were recovered in said *Jefferson* Circuit Court:

1. On the 5th of February, 1856, by *The Madison In-*

*surance Company* against *Paul Hendricks* and others, for five hundred and twenty-one dollars and fifteen cents, and costs of suit.

2. On the 18th of March, 1856, by *Lawson & Yerkes* against *Paul* and *Josiah G. Hendricks*, for one hundred and twenty-five dollars and eight cents, and costs.

3. On the 18th of March, 1856, by *Henry F. West* against *Paul* and *Josiah G. Hendricks*, for one hundred and forty-seven dollars and forty-eight cents, and costs.

4. On the 20th of March, 1856, by *Charles E. Walker* against *Paul Hendricks*, for two hundred and seventy-one dollars and three cents, and costs.

5. On the 6th of May, 1856, by *Caleb Schmidlapp* against *Paul Hendricks*, for two hundred and twenty-seven dollars and forty-eight cents, and costs.

6. On the 5th of August, 1856, by *Abijah W. Pitcher* against *Paul Hendricks* and another, for one hundred and ninety-seven dollars and three cents, and costs.

7. On the 5th of August, 1856, by *Joseph P. Webster* against *Paul Hendricks*, for one hundred and forty-six dollars and seventeen cents, and costs.

8. On the 5th of August, 1856, by *Arthur Orr* against *Paul Hendricks*, for two hundred and twenty-seven dollars and twenty-four cents, and costs.

That on the 20th of December, 1856, executions on each of said judgments were in the hands of said *Salyers* as sheriff, to be by him served and collected. That the execution on the judgment in favor of the insurance company had been levied upon lot No. 4, etc., which, on the day last mentioned, the sheriff sold for the sum of one thousand and twenty-five dollars, which was paid down.

That the execution, in favor of *Schmidlapp*, was levied upon certain lots, describing them, in the addition west to the city of *Madison*. This property, at the same time, was bid off and purchased by the relator, *Wilber*, at the sum of one

hundred and forty dollars, which he paid down, and received the sheriff's deed.

That the execution, in favor of *Pitcher*, had been levied upon three lots, describing them, in the city of *Madison*, two of which lots were bid off and purchased by the relator, at the sum of one hundred and fifty dollars, and one by *William Stapp* at the sum of one hundred and twenty dollars, which moneys were paid down, and the parties received the sheriff's deed. That said sheriff received, in cash, on the three several sales thus made, on the 20th of December, 1856, the sum of one thousand four hundred and thirty-five dollars.

It is averred, that on said 20th of December, 1856, there was due, on the execution, in favor of the insurance company, including interest and costs,    $586 60
On the execution, in favor of *Lawson & Yerkes*, including interest and costs, - - - - -    127 92
On the execution, in favor of *West*, including interest and costs, - - - - - -    156 66
On the execution, in favor of *Walker*, including interest and costs, - - - - - -    313 45

Making - - - - - - - -    $1,184 63

These judgments were older than those under which *Wilber* made his said purchases.

It is averred, that it was the duty of the sheriff to pay said judgment with the money so made on said sales; but that he, knowingly, etc., left the judgments, in favor of *Lawson & Yerkes*, and in favor of *West*, wholly unpaid and unsatisfied, and falsely returned each of the executions thereon, "nothing found whereon to levy," which return was false and fraudulent.

That the sheriff disposed of the one thousand four hundred and thirty-five dollars as follows:

1. He paid the judgment, in favor of the insurance
   company, in full, - - - - - - $586 62
2. He paid the *Walker* judgment, - - - 313 45

$900 07

Leaving undisposed of the sum of five hundred and thirty-four dollars and ninety-three cents, which he applied, in part, to younger judgments, and, in part, retains in his own hands.

That afterward, on the 24th of December, 1857, other writs of execution were issued upon said judgments in favor of *Lawson & Yerkes,* and of *West,* and were placed in the hands of said sheriff, to be levied upon the property so purchased by said *Wilber;* that these executions were levied upon said property, and afterward, on the 30th of January, 1858, the said property was sold by virtue thereof to other purchasers, whereby the relator lost the property thus purchased by him.

Such is the substance of the case made by the complaint.

The statement of a few legal propositions will be sufficient to dispose of the case. Each of the judgments became a lien upon the real estate of the defendants therein, from the date of the rendition thereof; and there is no doubt that the money made on the sales should have been applied on the several judgments, in the order of their seniority; paying the oldest judgment first, and so on until the moneys were exhausted. *Steele* v. *Hanna,* 8 Blackf. 326. *Harrison* v. *Stepp, Id.* 454. *McMahon* v. *Thompson,* 2 Ind. 114. *Peck* v. *Tiffany,* 2 Comst. 451. The executions were all in the hands of the sheriff at the time of the sale, and it was wholly immaterial upon whose execution the sales were made, the money should have been applied as above indicated. *Rogers* v. *Edmunds,* 6 N. H. 70.

Had the moneys been properly applied, the land purchased by the relator would have been discharged of the judgment

liens. But, in our opinion, the same result must follow, so far as he is concerned, as if the money had been properly applied. The purchaser of land at a sheriff's sale on execution, is not bound to see that the sheriff makes a proper return to the execution; nor, indeed, that he makes any return at all. *Doe* v. *Heath*, 7 Blackf. 154. See, also, *Neilson* v. *Neilson*, 5 Barb. 565.

There was more than enough made on the sale which took place on the 20th of December, 1856, to pay off all the judgments which were prior to those under which the relator purchased, including the *Lawson & Yerkes*, and the *West* judgments; and we have seen, that it was wholly immaterial under which one of the judgments the sales were made; the oldest judgment was entitled to be first paid, and so on in chronological order. The judgments in favor of *Lawson & Yerkes*, and of *West*, must be deemed to have been paid and satisfied by the sale thus made on the 20th of December, 1856, the money arising from that sale being applicable to their payment. It is clear enough, that when a sheriff levies an execution upon real estate, and sells it for enough to pay the debt, receives the money, and makes the purchaser a deed, the judgment is extinguished, whether the sheriff make return to the execution or not, or although he make a false return. *Neilson* v. *Neilson*, *supra*. In such case the judgment-plaintiff must look to the sheriff and his sureties, and can not again collect the debt of the judgment-defendant.

In this case *Lawson & Yerkes*, and *West*, might have looked to the sheriff for their money, as having been realized by the sale made on the 20th of December, 1856, but they could not legally have issued another execution upon their judgments, as they had become liquidated and defunct.

The sale afterward made, on the 30th of January, 1858, we regard as an absolute nullity, if made to a person having actual or constructive notice of the facts, because the

judgments on which the executions issued, had been paid and satisfied by virtue of the former sale. Indeed, the weight of authority seems to be, that a sale on a satisfied judgment will vest no title, even in an innocent purchaser. *Wood* v. *Colvin*, 2 Hill, 566. *Neilson* v. *Neilson, supra. Hammett* v. *Wyman*, 9 Mass. 138. *King* v. *Goodwin*, 16 *Id.* 63. *Jackson* v. *Cadwell*, 1 Cow. 622.

But suppose a sale to an innocent purchaser, under such circumstances, would be good, still there is not enough shown, by the complaint, to invalidate the title of *Wilber*, the relator, as it does not appear who was the purchaser at the latter sale, nor that he had not notice. For aught that appears, the sale may have been to the execution-plaintiffs, or to a purchaser having notice of the facts.

From all that is stated in the complaint, it does not appear that *Wilber's* title is at all affected by the sale made on the 30th of January, 1858; hence, he seems to have no valid cause of action against the sheriff. Whether or not, had his title been defeated by the latter sale, he could have sued the sheriff, on his bond, for making a false return to an execution in favor of another, or for not properly applying the proceeds of the first sale, or whether he should have taken steps to stop the second sale, we need not determine. The ground upon which we place the case is, that it does not appear that the relator has been injured by the wrongful acts of the sheriff. Hence, the judgment below must be affirmed.

*Per Curiam.*—The judgment is affirmed, with costs.

*S. C. Stevens*, for the appellant.